**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DONALD STEVENSON, ID # 1825829,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | No. 3:15-CV-3888-D  (BH) |
| | ) | |
| **BRYAN COLLIER,[1] Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Donald Stevenson  (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The respondent is Bryan Collier, Executive Director of TDCJ (Respondent).

**A.**    **Factual and Procedural History**

On April 25, 2012, the State indicted Petitioner for unlawful possession of a firearm by a felon in Cause No. F12-54029.  (Doc. 21-7 at 13.).  On May 8, 2012, he was indicted for aggravated kidnapping in Cause No. F12-54028.  (Doc. 21-3 at 14.)[2]

---

[1] Bryan Collier succeeded Brad Livingston as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, he "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Petitioner initially pleaded not guilty.  (Doc. 20-12 at 3.)  On the day that trial was set to begin in the 265th Judicial District Court of Dallas County, Texas, he stated that he did not understand the charges against him.  (Doc. 20-13 at 8.)  The Court explained the aggravated kidnapping charge, and Petitioner stated that although he did not know why he was being charged with that offense, he understood the charges.  (*Id*. at 8-12.)  He then stated that he did not want a trial and that he wanted to enter an open plea.  (*Id*. at 14.)  After consulting with counsel, Petitioner entered a plea of no contest and executed plea papers that included judicial confessions to both offenses.  (Docs. 20-13 at 16, 17; 21-3 at 26-30; 21-7 at 29-33.)  At the conclusion of the hearing, Petitioner stated that he understood everything that had occurred, and defense counsel stated that he believed that Petitioner was mentally competent.  (Doc. 20-13 at 18.)

Although Petitioner pleaded no contest, the State presented testimony from the kidnapping victim.  Defense counsel cross-examined her, Petitioner testified, and defense counsel argued that Petitioner was not guilty of kidnapping.

The kidnapping victim testified that she met Petitioner and moved in with him for about one month. (Doc. 20-14 at 7-8.)  When she would leave the house, Petitioner would get angry and go look for her.  (*Id*. at 8.)  When he found her, he beat her, put a knife to her throat, and said that she was his and was not going anywhere.  (*Id*. at 8, 19.)  He pointed a gun at her and threatened to kill her if she left him.  (*Id*. at 9-10.)  Once, when she left the house, police officers stopped her as she was being chased by Petitioner, and she told them that he was chasing her.  (*Id*. at 15.)  He told them that she had stolen from him, and they believed him.  (*Id*.)  Later, he locked her clothes in a shed, and all she had to wear in the house was a t-shirt.  (*Id*. at 8-9.)  Eventually, she had nothing to wear in the house.  (*Id*. at 17-18.)  The house had bars on the windows, and he put a padlock on the gate

so that she could not leave.  (*Id*. at 13.)  She was not allowed to leave the house.  (*Id*. at 18.)  He sexually abused her, and punished her if she did not have sex with him.  (*Id*. at 20-22.)  Finally, when Petitioner was sleeping, she got the phone from under his pillow, called her boyfriend who had just been released from jail, and told him what was happening.  (*Id*. at 24-25.)  He called the police, who came to the house; firefighters cut the padlock and got her out of the house.  (*Id*. at 25, 27.)  Police found guns and bullets in the house.  (*Id*. at 27.)  Numerous photographs of the interior and exterior of the house, and of the victim's wounds, were admitted into evidence.

Defense counsel cross-examined the victim at length.  (*Id*. at 33-49.)  He pointed out that she had prior convictions.  (*Id*. at 33-35.)  He brought out that she knew that Petitioner had received some money because he had told her, and she saw a DVD that showed Petitioner receiving money as a settlement for some matter.  (Doc. 20-14  at 40, 47.)  Counsel suggested that she and her boyfriend conspired to have Petitioner incarcerated so that she could take his money.  (*Id*. at 41, 47-48.)

Petitioner testified that she was locked in the house for her protection because her former boyfriend had threatened her.  (Doc. 20-15 at 18-19.)  He testified that she knew he had over $4,000 in the house from social security.  (*Id*. at 20.)  He claimed that he never held her against her will or threatened her.  (*Id*. at 22.)

Defense counsel argued that although Petitioner pleaded no contest, the State failed to prove that he committed aggravated kidnapping, and counsel asked the court to find him not guilty of that offense.  (*Id*. at 51.)  Petitioner was found guilty and was sentenced to 30 years' imprisonment in each case, to run concurrently, on November 30, 2012.  (Docs. 21-3 at 32, 21-7 at 35.)

The judgments were affirmed on appeal.  *Stevenson v. State*, Nos. 05-12-01668-CR & 05-12-

01669-CR, 2014 WL 3555767 (Tex. App. – Dallas July 17, 2014).  Petitioner's petitions for discretionary review were refused.  *Stevenson v. State*, PD-1033-14 & PD-1034-14 (Tex. Crim. App. Nov. 26, 2014).  He filed state habeas applications that challenged his convictions, signed on July 14, 2015, which were received by the state court on July 21, 2015.  (Docs. 21-12 at 5, 31; 21-16 at 5, 21.)  On November 4, 2015, they were denied without written order on the findings of the trial court.  (Docs. 21-10, 21-13); *see Ex parte Stevenson*, WR-71,015-2 & WR-71,015-03 (Tex. Crim. App. Nov. 4, 2015).

**B.    Substantive Claims**

Petitioner's habeas petition, signed on January 21, 2016, challenges his convictions on the following grounds:

(1) The State failed to prove aggravated kidnapping;

(2) Trial counsel was ineffective because he:

(a) falsified the plea agreement by forging it;

(b) failed to expose perjury;

(c) failed to object to the admission of prejudicial photographs;

(d) failed to investigate and summon key witnesses;

(e) failed to investigate Petitioner's competency;

(f) failed to present Petitioner's mental health issues and records;

(g) failed to present evidence of a documented medical condition;

(3) The prosecution failed to disclose exculpatory evidence.

(Doc. 9 at 6-7, 11-13; doc. 10.)  Respondent filed a response on April 22, 2016.  (Doc. 19.) Petitioner filed a reply on June 28, 2016.  (Doc. 31.)

4

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to

procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if

the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## III.  EXHAUSTION

Respondent contends that although Petitioner's claims regarding the aggravated robbery conviction are exhausted, the only claims regarding his conviction for unlawful possession of a firearm that he exhausted are his claims of ineffective assistance of counsel for falsification of the plea agreement by forgery and for failure to investigate competency.

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court.

*See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus.  *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.

In the state habeas application challenging the conviction for unlawful possession of a firearm by a felon, Petitioner raised his claims of ineffective assistance of counsel for falsification of the plea agreement by forgery and for failure to investigate competency.  (Doc. 21-16 at 10, 12.) He did not raise his other federal claims about the possession of a firearm conviction in state court, and those claims are unexhausted.

Notwithstanding the fact that those claims have not been exhausted, they are procedurally barred from federal habeas review.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  *Id*.  In those cases, the federal procedural default doctrine precludes federal habeas corpus review.  *Id*.; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred).  Here, if Petitioner brought his unexhausted claims in a subsequent state habeas corpus application, the Court of Criminal Appeals would consider those claims to be procedurally defaulted as a successive state habeas application under Article 11.07 § 4 of the Texas Code of Criminal Procedure, so those claims are

also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423. Even if the claims were not unexhausted and procedurally barred, however, they lack merit for the reasons stated below.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends that his trial counsel rendered ineffective assistance.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams*

8

*v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.    Plea Agreement

Petitioner contends that he did not sign the plea agreement, and that one of his two trial attorneys falsified it by forgery.

The plea agreement stated that there was no agreed punishment, and that Petitioner was entering an open plea of no contest. (Docs. 21-3 at 26-29, 32; 21-7 at 29-32, 35.) Counsel submitted an affidavit in response to the state habeas application in which he denied that he forged Petitioner's signature on the plea agreement. (Doc. 21-12 at 203.) It stated that Petitioner and co-

9

counsel signed the plea agreement.  (*Id*. at 202.)  The state habeas court found that counsel was trustworthy, noting that counsel denied forging the document, and that Petitioner's signatures on all the documents were similar and did not resemble either trial counsel's signature.  (*Id*. at 196-97.) The court concluded that Petitioner did not establish that he received ineffective assistance of counsel.  (*Id*. at 197.)

Petitioner has not shown that the state court's rejection of this claim was unreasonable.  He has not shown deficient performance.  Moreover, he has not shown prejudice.  Before the court, Petitioner entered an open plea of no contest, and he admitted that he signed a judicial confession in each case.  (Doc. 20-13 at 16, 17.)  The judicial confessions admitted that he committed the offenses.  (Docs. 21-3 at 30; 21-7 at 33.)  He is not entitled to relief on this claim.

## B.  **Perjury**

Petitioner contends that counsel failed to expose a witness's perjury, but his § 2254 petition or memorandum did not identify the witness or allegedly perjured testimony.  His reply alleges that the kidnapping victim committed perjury when she testified that the only reason she knew that Petitioner had money was from a DVD of Petitioner receiving a monetary settlement.  He contends that the DVD does not mention any money, and the victim falsely testified that it showed him receiving money.

In an affidavit in the state habeas proceeding, one of Petitioner's trial attorneys stated that he was not aware of any perjury by a state's witness.  (Doc. 21-12 at 196.)  The state habeas court found that counsel was trustworthy, and that Petitioner did not establish that counsel was ineffective. (*Id*. at 196, 197.)

Petitioner does not explain how counsel should have known that the victim's testimony

regarding the DVD was perjured, and if perjured, how that affected his case. Counsel sought to show that the victim was aware that Petitioner had money, and suggested that this was a motive to have him arrested. Petitioner has not shown that whether the victim knew that information from Petitioner or from having watched the DVD would have affected the outcome. He has not shown deficient performance or prejudice, or that the state court's rejection of this claim was unreasonable.

### C.    __Photographs__

Petitioner contends that counsel failed to object to the admission of prejudicial photographs of the crime scene and of the victim's injuries.

Petitioner has not identified any specific photographs that were objectionable. Counsel's affidavit stated that there were no legal objections available for the photographs. Petitioner asserts in his reply that the photographs do not prove that the victim was assaulted, and that they were prejudicial to him. He has not shown that the photographs of the crime scene and of the victim's injuries were not relevant, and he has not alleged how they were prejudicial. He has not asserted any valid legal basis for objecting to the photographs. His conclusory claim does not entitle him to relief. *See United States v. Woods*, 870 F.2d at 288 n.3; *Miller v. Johnson*, 200 F.3d at 282. Counsel was not ineffective for failing to raise a meritless objection. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). He has not shown that the state court's rejection of this claim was unreasonable.

### D.    __Witnesses__

Petitioner contends that counsel failed to investigate and summon key witnesses. His reply asserts that there were witnesses who knew that the victim lived at the house where she was found.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *See Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id*.

Counsels' affidavits stated that they attempted to talk to as many witnesses as would talk about the case, and that they contacted witnesses that Petitioner wanted contacted, although most had nothing significant to say. (Doc. 21-12 at 200, 201, 202.) Petitioner has not identified any exculpatory witness that counsel should have investigated, discovered, or presented. *Miller v. Dretke*, 420 F.3d at 361. Regarding witnesses who could have testified that the victim lived at the house where she was found, the victim testified that she lived there. Petitioner does not contend that there were any witnesses who could have testified that she was not kept locked in the house. In fact, Petitioner admitted that she was locked in the house, but he testified that she was locked in the house for protection from her former boyfriend. He has not shown that the state court's rejection of this claim was unreasonable.

12

E.    **Competency**

Petitioner contends that counsel failed to investigate his competency.

Due process requires that a criminal defendant be competent to stand trial before he is prosecuted. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). "[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). A person lacks mental competency if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

As discussed, Petitioner initially indicated that he did not understand the charges against him. *Stevenson*, 2014 WL 3555767 at *3. The court explained the charges, and he stated that he understood the charges and the proceeding in which he pleaded no contest. *Id*. at 3-4. When Petitioner testified, he affirmed that he understood everything about the case. (Doc. 20-15 at 15.)

The affidavit from one defense counsel stated that there was never a time during counsel's contact with Petitioner that counsel thought that competency was an issue. (Doc. 21-12 at 200.) The affidavit from the other defense counsel stated that the defense attorneys had a lengthy conversation with Petitioner about his desire to plead no contest to make sure that he had a complete understanding of what he was doing. (*Id*. at 202.) Petitioner does not identify what an investigation by counsel would have revealed about competency. *See Miller v. Dretke*, 420 F.3d at 361. He has not shown that he was incompetent. He has not shown that the state court's rejection of this claim was unreasonable.

F.    **Mental Health Issues, Records, Medical Condition**

Petitioner contends that counsel failed to present evidence of his mental health issues and

records and failed to present evidence of a documented medical condition that he claims made it impossible for him to commit sexual assault. Petitioner does not identify any mental health issues, records, or medical condition that should have been made known to the court.  His conclusory claims do not entitle him to relief.  *See United States v. Woods*, 870 F.2d at 288 n.3; *Miller v. Johnson*, 200 F.3d at 282.  Counsel's affidavit stated that Petitioner's mental health was not an issue, he never said that he had a medical condition that prevented him from having sex, and even if that was true, it would not have prevented him from committing aggravated kidnapping.  (Doc. 21-12 at 199, 200.)  Because Petitioner did not inform counsel about a medical condition, counsel was not ineffective for failing to discover and present such evidence.  *See Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir.1997) ("counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel").  Even if Petitioner was incapable of having sexual intercourse, that would not necessarily mean that he was incapable of otherwise sexually abusing the victim.  Petitioner has not shown that the state court's rejection of these claims was unreasonable.

## V.  SUFFICIENCY OF EVIDENCE

Petitioner contends that the State did not prove that he committed aggravated kidnapping, and that the victim's testimony was not corroborated.

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal.  *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing that this is a long-standing legal principle under Texas law).

Petitioner did not raise this claim on direct appeal. Although he raised it on state habeas, the habeas court determined that the claim was not cognizable on habeas review. (Doc. 21-12 at 197.) When the state court rests its decision on a procedural bar, the procedural default doctrine generally bars federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

Petitioner's procedural default of any claim of insufficiency of the evidence under Texas law constitutes an adequate and independent state procedural ground to bar federal habeas review of the claim. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (citing *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004), and *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004)). The claim is therefore procedurally barred unless he shows cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000). He has not shown cause and prejudice, and he has not shown a fundamental miscarriage of justice or actual innocence.

Petitioner has also not shown that his claim has merit. Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within

15

the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

The aggravated kidnapping indictment alleged that Petitioner "did unlawfully and knowingly abduct [the complainant], in that [he] restrained [her] by confining [her] and moving [her] from one place to another, and by secreting and holding [her] in place where she was not likely to be found and by threatening to use deadly force, and [he] did intentionally and knowingly abduct [her] with the intent to inflict bodily injury on [her] and to violate and abuse [her] sexually." (Doc. 21-3 at 14.)

Petitioner judicially confessed that the facts alleged in the indictment were true. (*Id*. at 30.) The victim testified that when she left the house, Petitioner found her, beat her, put a knife to her throat, and said that she was his and was not going anywhere. He took her back to the house, where he kept her locked in, inflicted bodily injury, threatened to kill her if she left, and sexually abused her. Petitioner's judicial confession and the victim's testimony constituted sufficient evidence to support the conviction for aggravated kidnapping.

## VI.  EXCULPATORY EVIDENCE

Petitioner contends that the State failed to disclose exculpatory evidence. Specifically, he asserts that a witness said that the victim lived at the residence where she was found, and that there was a voicemail.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material

16

to his guilt or punishment.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed.  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

The habeas court determined that Petitioner provided the police with the voicemail message he references during his interrogation, so that evidence was known to him, and the State had no duty to produce it.  He does not identify the witness who said the victim lived at the residence.  He does not allege how the witness's statement and the voicemail were exculpatory, or that he or counsel were unaware of them at the time that he was found guilty.  If Petitioner is referring to Kenneth Williams, apparently a potential witness, the State informed the Court at a pretrial hearing that it had disclosed to defense counsel that Williams's statement included *Brady* material, although the record does not show the nature of that *Brady* material.  (Doc. 20-12 at 7.)  Petitioner's conclusory claim does not entitle him to relief.  *See United States v. Woods*, 870 F.2d at 288 n.3; *Miller v. Johnson*, 200 F.3d at 282.  He has not shown that the state court's rejection of this claim was unreasonable.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.  Petitioner has not shown he is entitled to an evidentiary hearing.

## VIII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 8th day of January, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE